IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LARRY ROGER BAISDEN, II, #298382, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-244-ALB-JTA |
| | ) | (WO) |
| | ) | |
| CORIZON, LLC and NURSE MITCHELLE,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[2]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Larry Roger

Baisden, II, an indigent state inmate, for deliberate indifference to a jaw injury suffered on

April 15, 2016 during a prior term of incarceration at the Staton Correctional Facility.  Doc.

1 at 3.  Specifically, Baisden challenges the initial diagnosis and treatment of his jaw injury.

Doc. 1 at 3.  Baisden names Corizon, LLC, the former contract medical care provider for

the Alabama Department of Corrections, and Regina Mitchell, a licensed practical nurse

employed by Corizon at the time relevant to the complaint, as defendants.  Baisden seeks

---

[1] The plaintiff initially lists Nurse Mitchelle as a defendant.  However, it is undisputed that Nurse Mitchelle's true name is Regina Mitchell.  For purposes of this Recommendation and in the interest of clarity, the court will henceforth simply refer to this defendant by her true name.
[2] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

monetary damages and a pardon for the alleged violations of his constitutional rights.  Doc. 1 at 4.[3]

The defendants filed special reports (Docs. 8 & 15), supplemental special reports (Docs. 22, 25, 40 & 78) and relevant evidentiary materials in support of these reports, including affidavits and certified copies of Baisden's medical records, addressing the deliberate indifference claim raised in the complaint.  In these documents, the defendants deny they acted in violation of Baisden's constitutional rights in providing medical treatment to him for his jaw injury.   Specifically, the defendants maintain they did not act with deliberate indifference to Baisden's medical needs.  The medical records support this assertion as these records demonstrate that Baisden received treatment from medical personnel based on their examinations of him and the results of x-rays taken of his jaw.

After reviewing the special reports and first supplemental special report filed by the defendants, the court issued an order on September 1, 2017 directing Baisden to file a response to each of the arguments set forth by the defendants in their reports and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials.  Doc. 24 at 2.  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order]

---

[3] The request for a pardon which, if granted, would result in Baisden's release from incarceration is not a proper request for relief in this 42 U.S.C. § 1983 action nor does the claim of deliberate indifference presented in the complaint in any way impact the basis for his incarceration.  Thus, this request for relief is not appropriately before the court in this cause of action.

and **without further notice to the parties** (1) treat the special report[s] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 24 at 3 (emphasis in original). Baisden submitted sworn responses to each of the special reports and supplements to these reports on September 13, 2017 and September 20, 2017, respectively. Docs. 28, 32 & 33. With respect to the third supplemental special report filed by the defendants, the court provided Baisden an opportunity to "file a response to the supplemental special report" and advised him that "[a]ny response . . . shall comply with the directives of the order entered on September 1, 2017. (Doc. 24)." Doc. 29 at 2. The court again advised the parties that it would, in the future, "(1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 29 at 2. Baisden filed an additional sworn response on October 30, 2017. Doc. 49. As to the fourth supplemental special report, which consisted of Baisden's medical records, Doc. 78, the court again allowed Baisden an opportunity to "file a response to such records[,]" and advised him that "any response [he] filed . . . should comply with the directives of the order entered on September 1, 2017 (Doc. No. 24)." Doc. 77 at 1. Baisden filed an unsworn reply on July 24, 2019. Doc. 79.

Pursuant to the directives of the above described orders, the court now treats the defendants' special reports and supplements to these reports as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the

evidentiary materials filed in support thereof, the sworn complaint and responses filed by Baisden, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks

evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. As to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014);

*Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material

fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fac, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Baisden has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

# III.  DISCUSSION[4]

## A.  Deliberate Indifference

Baisden alleges defendants Corizon and Mitchell violated his constitutional rights with respect to the treatment provided for a jaw injury he suffered on April 15, 2016.  In support of this claim, Baisden asserts the defendants initially failed to diagnose his injury as a broken jaw and, due to such, did not provide him proper treatment for this injury for approximately two weeks.  Doc. 1 at 3.[5]   These assertions entitle Baisden to no relief.

**1.  <u>Standard of Review</u>.**  To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d

---

[4] Defendant Mitchell, an employee of Corizon, a private medical provider previously contracted to provide medical treatment to Alabama inmates, asserts she is entitled to qualified immunity.  Doc. 17 at 3.  However, the court finds that qualified immunity does not extend to this defendant.  *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) (declining to extend qualified immunity to a prison physician employed by a private for-profit corporation  contracted to provide medical care to inmates); *Richardson v. McKnight*, 521 U.S. 399, 408–12 (1997) (holding that because of the influence of market forces on private employers qualified immunity did not extend to prison guards who were employed by a private, for-profit corporation that had contracted with the state to manage the prison).  Thus, the court will forego any discussion of qualified immunity.

[5] The court limits its review to the allegations set forth in the complaint.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Under well settled law, neither medical malpractice nor negligence equates to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts

signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986); *Estelle*, 429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated"); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint because "misdiagnosis and inadequate treatment involve no more than medical negligence"); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate

indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that misdiagnosis of pituitary tumor sounds in negligence and is not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding Plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3–4 (M.D. Fla. Aug. 30, 2012) (finding that misdiagnosis of inmate with Ganglion cyst which "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . .   At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.   [An inmate's] allegations sounding in malpractice or negligence do not state a federal constitutional claim.") (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)).

In addition, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things: aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the

inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted) (alterations in original).   Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).   Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.   When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)].   Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted).   Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).   Nor does a simple difference in medical

> opinion between the prison's medical staff and the inmate as to the latter's
> diagnosis or course of treatment support a claim of cruel and unusual
> punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551
> F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks and citation omitted). Moreover, the law is clear that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). The law likewise provides that an inmate is not entitled to referral to an outside physician for evaluation. *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that the defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference"); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant

"exposed plaintiff to any serious risk of harm"); *Dixon v. Jones*, 2014 WL 6982469, at \*9 (M.D. Ala. Dec. 9, 2014) (finding that jail physician's denial of second opinion regarding treatment provided to inmate for physical injuries did not constitute deliberate indifference); *Youmans v. City of New York*, 14 F.Supp. 357, 363–64 (S.D.N.Y. 2014) (noting that "courts in the Second Circuit have held that failure to provide a second opinion is not generally a violation of a prisoner's Eighth Amendment rights"); *Schomo v. City of New York*, 2005 WL 756834, at \*10 (S.D.N.Y. Apr. 4, 2005) (finding that doctor's decision to deny inmate a second opinion regarding his physical capabilities did not constitute deliberate indifference "since prisoners are not constitutionally entitled to a second medical opinion").

**2. <u>Analysis of the Claim for Relief.</u>**  Baisden challenges the adequacy of treatment provided to him by medical personnel for an injury to his jaw from April 15, 2016 until April 26, 2016 when he was referred to a free world surgeon for treatment.

The defendants adamantly deny anyone acted with deliberate indifference to Baisden's medical needs during the time relevant to the complaint and maintain that Baisden had continuous access to health care personnel and received treatment from medical professionals for his complaints during this time.  The medical records before the court demonstrate that medical personnel at Staton evaluated Baisden each time he appeared at sick call or a medical appointment with complaints related to his jaw, assessed his need for treatment, prescribed medication to him, ordered x-rays to assist in treating Baisden and provided treatment to Baisden in accordance with their professional judgment based on the results of their examinations and x-rays.

The defendants submitted affidavits and relevant medical records in response to the complaint filed by Baisden.   After a comprehensive review of the medical records submitted in this case, the court finds that the details of medical treatment provided to Baisden as set forth in the affidavits submitted by the defendants are corroborated by the objective medical records contemporaneously compiled during the treatment process.   In an affidavit filed by Nurse Mitchell, she sets forth her involvement with the medical treatment provided to Baisden, in relevant part, as follows:

> I am an LPN and not a medical provider.   I do not prescribe medications for patients/inmates nor dictate what medical treatment will and/or will not be provided to inmates/patients.
>
> . . . . [T]he medical records reveal that on April 15, 2016, at 1:10 p.m., Mr. Baisden was brought to the Health Care Unit at the Staton Correctional Facility by a Department of Corrections' Officer.   I performed an initial evaluation on Mr. Baisden and completed an inmate body chart notation form [and nursing encounter tool based on this examination].   Medical records reveal that Mr. Baisden informed me that he had been involved in an altercation with another inmate and got punched in the jaw.   The medical records reveal, on the nursing encounter tool, that Mr. Baisden complained of pain of 3 out of 10 and that Mr. Baisden had a small cut to his lip and an abrasion on his left elbow.
>
> . . . .
>
> The nursing encounter tool shows that I informed Mr. Baisden that if symptoms persisted or worsened he was to sign up for sick call.   [He was provided an ice pack for 24 hours as needed.]   Mr. Baisden did not express any dissatisfaction with my nursing care for him and Mr. Baisden verbalized understanding [of instructions given to him that if symptoms persist or worsen to sign up for sick call].
>
> The next time I saw Mr. Baisden was on April 26, 2016, at 2:20 p.m.
>
> The inmate body chart documentation [prepared on this date] indicates that Mr. Baisden informed me that he got hit in the jaw [by another

inmate] and that his jaw was swollen.  The note [on the body chart] specifically states "I got hit in the jaw (swollen)".

. . .

The nursing encounter tool, completed by me on April 26, 2016, indicates that Mr. Baisden was complaining of a swollen jaw.  The objective indications as set forth on the medical chart [in the nursing encounter tool] reveal that Mr. Baisden had some swelling and redness on the right side of his chin.  I also noted that Mr. Baisden had a small amount of clear drainage coming from his chin. . . .

The medical records reveal that I ordered x-rays of Mr. Baisden's face [specifically the right side of his chin and jaw] and referred Mr. Baisden to see the medical provider due to the fact that he had x-rays taken on April 26, 2016 of his face.

It does not appear from the medical chart of Mr. Baisden that I saw Mr. Baisden again subsequent to seeing him on April 26, 2016 and referring Mr. Baisden to have x-rays and to follow up with a medical provider.

At no time did I ever delay or deny Mr. Baisden nursing care.

At all times, I followed nursing protocols by seeing Mr. Baisden when he was walked to the health care unit by correctional officers, assessing Mr. Baisden, performing [] body chart[s] on Mr. Baisden, and referring Mr. Baisden to [a facility physician] for [] medical treatment.

I at all times carried out my duties as an LPN.

Doc. 40-2 at 3–5 (paragraph numbering omitted).

In his affidavit, Dr. Ronald Herring, the Medical Director at Staton at the time relevant to the complaint, states as follows:

I am aware that Mr. Baisden alleges that he was involved in an altercation on April 15, 2016, with another inmate and that he did not receive adequate medical attention between the dates of April 15, 2016, through April 29, 2016, as the result of the medical issues he received from the altercation that took place on April 15, 2016.

The medical records reveal that on April 15, 2016, at 1:10 p.m., Mr. Baisden was brought to the health care unit at the Staton Correctional Facility by a Department of Corrections' officer. Mr. Baisden was initially seen and evaluated by Nurse Mitchell. Mr. Baisden informed Nurse Mitchell that he had been involved in an altercation with another inmate and that he got punched in the jaw. Nurse Mitchell's evaluation showed that Mr. Baisden had a small cut to his lips and an abrasion to his left elbow. Nurse Mitchell noted on the nursing encounter tool as follows:

> Patient informed that if symptoms persist or worsen, to sign up for sick call. Patient verbalized understanding.

Mr. Baisden completed a sick call request three days later, on April 18, 2016. On the sick call request, Mr. Baisden noted: "In severe pain, jaw fractured. Can't eat."

I personally saw Mr. Baisden for the first time on April 20, 2016. I performed a thorough evaluation of Mr. Baisden. I thereafter ordered an x-ray that was taken on April 21, 2016. The x-ray from that date was read by the radiologist as follows:

> Mandible complete, Min. 4V, right.

> Results: The mandibular ossification pattern is normal. No fracture is seen. There are no loose teeth. No gross dislocation of temporomandibular joint is seen.

> Conclusion: Normal mandible.

> Facial bones less than 3 views.

> Results: The osseous structures are unremarkable including grossly intact orbital rims. Maxillary sinuses are unremarkable. No blow-out fracture is seen.

> Conclusion: Normal facial series.

Due to Mr. Baisden's continued complaints of pain in his jaw, and the negative x-rays taken on April 21, 2016, I ordered another series of x-rays that were taken the next day, on April 22, 2016. The x-rays taken on April 22, 2016, were read by the radiologist as follows:

Facial bones Min. 3V.

Results:  The osseous structures are unremarkable including grossly intact orbital rims.  Maxillary sinuses are unremarkable.  No blow-out fracture is seen.

Conclusion:   No fracture seen.   The findings are unchanged from 4/21/2016.

Mr. Baisden returned to the health care unit on April 26, 2016, at 12:20 p.m.  [The medical records show that Mr. Baisden was again seen by Nurse Mitchell. Nurse Mitchell noted the statement from Mr. Baisden as follows: "I got hit in my jaw (swollen)." On the body chart taken by Nurse Mitchell,  Nurse Mitchell noted "swollen [and] red [to right side of chin] small amount of drainage clear."  Nurse Mitchell made a notation that Mr. Baisden was to have x-rays on the right side of his face and chin and was to be followed up and evaluated by a medical provider — generally, a physician, a Physician's Assistant or Certified Registered Nurse Practitioner employed at the facility.]

[After his evaluation by the medical care provider on April 26, 2016,] another series of x-rays were taken of Mr. Baisden on [this date].  The x-rays taken on April 26, 2016 were read by the radiologist as follows:

Facial bones Min. 3V

Results:  The orbits are grossly normal. The paranasal sinuses are grossly clear.  There is no radiographic evidence of gross acute fractures.  There are no radiopaque foreign bodies.

Conclusion: There is no radiographic evidence of acute disease in the facial bones.  If there is a high clinical index of suspicion, then CT is recommended because it is a more accurate exam. The exam is overall not significantly changed compared with prior dated 4/22/2016.

Orbits comp, Min. 4V.

Results:  The orbits are grossly normal. The paranasal sinuses are grossly clear.  There is no radiographic

evidence of gross acute fractures. There are no radiopaque foreign bodies.

Conclusion: There is no radiographic evidence of acute disease in the orbits. If there is a high clinical index of suspicion, then CT is recommended because it is a more accurate exam. The exam is overall not significantly changed compared with the prior dated 4/22/2016.

On April 26, 2016, I, along with Physician's Assistant Forrest, recommended that Mr. Baisden undergo complete reconstruction of his right tympanic membrane[/eardrum] due to a traumatic event that had occurred prior to April 2016. [The recommendation for the complete reconstruction of his right eardrum had nothing to do with the altercation that Mr. Baisden had with the other inmate on April 15, 2016.]

Also, on April 26, 2016, I . . . noted that Mr. Baisden had a traumatic injury to his jaw and needed to be seen by a maxillofacial surgeon as soon as possible. [Therefore, on this day, an appointment was made for Mr. Baisden to be seen by an outside specialist at Baptist South Hospital in Montgomery on April 28, 2016.]

Mr. Baisden, in fact, was sent off site to be seen by a maxillofacial surgeon and was, in fact, seen on April 28, 2016.

Thereafter, Mr. Baisden underwent open reduction internal fixation for a fracture of his jaw [on April 29, 2016].

. . . .

Mr. Baisden did not initially show signs of trauma when he was first seen on April 15, 2016 [and stated to Nurse Mitchell that his pain was only a 3 on a scale of 1 to 10]. When Mr. Baisden complained three days later, an appointment was made for Mr. Baisden to be seen by me as the Medical Director at the Staton Correctional Facility. Thereafter, I had a series of x-rays ordered for Mr. Baisden, all of which were negative for a fracture. However, due to Mr. Baisden's continued complaints of pain, I made an appointment for Mr. Baisden to be seen by a specialist maxillofacial surgeon and surgery, in fact, was performed on April 29, 2016.

. . . .

At no time was Mr. Baisden's medical care denied or delayed.

I am personally aware of Mr. Baisden's claims, as well as the medical treatment that Mr. Baisden received [for his jaw from] both myself and the other medical providers and nurses at the Staton Correctional Facility.

Based upon my personal knowledge of the medical treatment that Mr. Baisden received, as well as my education, training and experience, it is my professional opinion that Mr. Baisden at all times received medical care within the standard of care of physicians practicing medicine in the State of Alabama.

Doc. 8-1 at 2–6 (paragraph numbering omitted).

In an affidavit filed by Dr. Hugh Hood, the Regional Medical Director for Corizon during the period of time relevant to the complaint, Dr. Hood, after review of Baisden's medical records, chronicles the treatment given to Baisden and further provides that:

Mr. Baisden did not initially show signs of trauma when he was first seen on April 15, 2016 [and advised his pain was only a 3 on a scale of 1 to 10]. When Mr. Baisden complained three days later, an appointment was made for Mr. Baisden to be seen by Dr. Herring as the Medical Director at the Staton Correctional Facility. Thereafter, Dr. Herring had a series of x-rays ordered for Mr. Baisden, all of which were negative for a fracture. [Despite the negative results of the x-rays taken on April 21, 2016, due to Mr. Baisden's continued complaints of pain, Dr. Herring had another set of x-rays taken on April 22, 2016 in which "no fracture is seen" and the radiologist noted that "the findings are unchanged from 4/21/2016."]

Mr. Baisden, thereafter, on April 26, 2016, was again seen in the health care unit and evaluated by Nurse Mitchell. As previously stated, Mr. Baisden informed Nurse Mitchell that he had been hit in his jaw which was swollen. X-rays were again taken which were again inconclusive. However, the radiologist stated that if there was [a high index of] clinical suspicion [of an injury] then further studies, such as a CT should be performed. Thereafter, Dr. Herring made an appointment for Mr. Baisden to be seen by a specialist maxillofacial surgeon and surgery, in fact, was performed [by the off-site surgeon] on April 29, 2016.

The [first two sets of] x-rays taken subsequent to the April 15, 2016 incident were all negative and the radiologist did not recommend further studies. [It was not until the third set of x-rays taken on April 26, 2016 that

the radi

ologist advised the possible use of further studies, such as a CT scan, should be undertaken if medical personnel suspected an injury not seen on the x-rays.]

There is nothing in the medical records to indicate that on April 26, 2016 that Mr. Baisden had any puss coming from any wound. The notation from Nurse Mitchell of April 26, 2016, states that Mr. Baisden, when she saw him, had swelling on his chin with redness and a small amount of clear drainage was noted. Mr. Baisden is completely wrong when he states that nothing was done subsequent to the altercation with the other inmate on April 15, 2016. The medical records clearly show that Mr. Baisden [received an initial evaluation immediately after the incident and was advised to sign up for sick call if his symptoms persisted or worsened but he] did not complete a sick call request until April 18, 2016 [which medical personnel received on April 19, 2016]. An appointment was made for Mr. Baisden to see the physician and he in fact was seen by Dr. Herring on April 20, 2016. Thereafter, x-rays were taken of Mr. Baisden on April 21 and April 22, 2016. Neither of those x-rays showed any fracture or abnormalities. Therefore, it is wrong for Mr. Baisden to suggest that he did not receive any medical treatment subsequent to April 15, 2016.

At no time was Mr. Baisden's medical care denied or delayed.

I am personally aware of Mr. Baisden's claims, as well as the medical treatment that Mr. Baisden received by the medical providers and nurses at the Staton Correctional Facility.

Based upon my personal knowledge of the medical treatment that Mr. Baisden received, as well as my education, training and experience, it is my professional opinion that Mr. Baisden at all times received medical care within the standard of care of physicians practicing medicine in the State of Alabama.

Doc. 40-1 at 4–10 (paragraph numbering omitted).

Under the circumstances of this case, the court finds that the course of treatment undertaken by medical personnel at Staton, including defendant Mitchell, did not violate Baisden's constitutional rights. Specifically, there is no evidence upon which the court can conclude that she or other health care providers acted in a manner that was "so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (internal quotation marks and citation omitted). Rather, the evidence before the court demonstrates that medical personnel evaluated Baisden each time he reported to the health care unit with complaints of jaw pain and ordered x-rays to aid in their assessment and treatment of his jaw. Whether medical personnel "should have [utilized] additional diagnostic techniques or forms of treatment [earlier in the evaluation process] 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal citation omitted). Additionally, the mere fact medical personnel did not refer Baisden for a second opinion of his diagnosis earlier in the treatment process does not constitute deliberate indifference. *Amarir*, 243 F. App'x at 354; *Dixon*, 2014 WL 6982469, at *9. Furthermore, to the extent the claims for relief sound in negligence or medical malpractice, neither of these constitutes deliberate indifference actionable in a § 1983 case. *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771. Finally, insofar as Baisden complains medical personnel should have pursued a different mode of treatment than that initially prescribed, this allegation does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Hamm*, 774 F.2d at 1575 (holding that inmate's desire for a different mode of medical treatment fails to establish deliberate indifference).

As a result, the court concludes that the medical treatment provided to Baisden did not constitute a violation of the Eighth Amendment. Baisden's assertions of deliberate

indifference violative of the Eighth Amendment do not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead v, Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Although [Plaintiff] attempts to overcome summary judgment by offering his own sworn statement[s] . . . to support his allegations, the contemporaneous medical records and opinions of the examining medical [professionals] show that this purported evidence" does not rise to the level of a constitutional violation.); *see Scott*, 550 U.S. at 380 (where a party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

In sum, based on well-settled law as cited herein, neither Baisden's desire for a different mode of medical treatment, the lack of immediate referral to a specialist for treatment, the failure to immediately diagnose a fracture in his jaw nor his disagreement with the treatment provided to him by the prison's medical personnel constitutes deliberate indifference.  Additionally, Baisden has failed to present any evidence which shows defendant Mitchell or any other medical provider knew that the treatment provided to him created a substantial risk to his health and with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence showing that defendant Mitchell acted with deliberate indifference to Baisden's medical condition.

With respect to Corizon, the law directs that Baisden cannot bring this action against Corizon based solely on the actions of an employee.  Instead, for § 1983 liability to attach to a private corporation providing medical care to inmates, a plaintiff must allege his constitutional rights were violated as a result of an established policy or custom of that

corporation.  *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997).  Moreover, liability under § 1983 may not be based on Corizon's role as the employer or supervisor of the doctors or nurses who are providing medical treatment to inmates.  *See e.g., Massey*, 646 F. App'x at 780.  In his complaint, Baisden does not identify or challenge any policy of Corizon and only challenges the treatment provided by a nurse employed by Corizon. Moreover, as previously determined, defendant Mitchell did not act with deliberate indifference.  Consequently, summary judgment is due to be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motions for summary judgment (Docs. 8 & 15), as supplemented (Docs. 15, 22, 25, 40, 78), be GRANTED.

2.      Judgment be GRANTED in favor of the defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the plaintiff.

On  or  before  **April 24, 2020, t**he  parties  may  file  objections  to  this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure  to  file  written  objections  to  the  proposed  factual  findings  and  legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal

conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.   11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 9th day of April, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE